UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IDA WILLIAMS,

        Plaintiff(s),

v.

WILLIAM BEAUMONT HOSPITAL,

        Defendant(s).

_____/

Case No. 06-12465

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiff Ida Williams filed this Title VII action alleging that Defendant William
Beaumont Hospital discriminated against her because of her race and fired her in retaliation
after she complained about the discrimination. Defendant argues that Plaintiff cannot make
out a prima facie case for either claim. This matter comes before the Court on Defendant's
motion for summary judgment. For the reasons set forth below, Defendant's motion is
GRANTED.

## I. Facts

Defendant hired Plaintiff in 2004 as a full-time Health Aid in its Hospice Division.
(Def.'s Mot. at 2; Pl.'s Resp. at 3.) Plaintiff's job was to visit hospice patients in their homes
or in facilities to provide hygienic care. (Def.'s Mot., Ex. 1 at 62, 70.) As part of her duties,
Plaintiff was required to fill out a Daily Activity Log that listed which patients she treated
each day and when she treated them. (Def.'s Mot. at 3.) Defendant used the log to
calculate Plaintiff's wages. (Def.'s Mot., Ex. 1 at 72.)

For purposes of employee discipline, Defendant follows a "Corrective Action Policy." (Def.'s Mot., Ex. 7.)  The Policy sets forth the appropriate sanction for various types of employee misconduct.  (*Id.*)  On December 8, 2004, pursuant to the Policy, Plaintiff received a one-day suspension for "falsification of documents." (Def.'s Mot., Ex. 5.)  In the course of investigating patient complaints about Plaintiff, Defendant discovered that Plaintiff had provided false information in her Daily Activity Logs.  (*Id.*)  Specifically, Plaintiff listed incorrect times for when she was visiting patients.  When confronted, Plaintiff admitted that she did not always record the exact times she was with patients.  Plaintiff was told that even though she accurately reported her total hours and work performed, listing incorrect times for individual patients constituted "falsification of records." (*Id.*)  Under the Corrective Action Policy, one instance of "Falsifying of Work Records" warrants either termination or a one-day suspension.  (Def.'s Mot., Ex. 7 at 10.)  Because Plaintiff was "a valued employee and [was] well liked by her patients and their families," she received a suspension.  (Def.'s Mot., Ex. 5.)  She was warned, however, that "[s]hould any further falsification of document occur it will result in immediate termination." (*Id.*)

On June 28, 2005, Defendant received another complaint regarding Plaintiff.  (Def.'s Mot., Ex. 8.)  Plaintiff's manager, Vicki Thompson, attempted to locate Plaintiff that day in the afternoon.  (*Id.*)  Although Plainitff's activity log for that day showed that she was providing care in the facility uninterrupted from 7:00 a.m. until 3:30 p.m., (Def.'s Mot., Ex. 9.), Ms. Thompson was unable to locate Plaintiff.  (Def.'s Mot., Ex. 8.)  On June 30, 2005, Ms. Thompson again was unable to locate Plaintiff in the nursing home in the afternoon.  (Def.'s Mot., Ex. 8.)  Ms. Thompson even paged Plaintiff over the intercom system; Plaintiff

did not respond.  (*Id.*)  Plaintiff's activity log for that day reported that she was in the facility uninterrupted from 9:15 a.m. until 5:00 p.m.  (Def.'s Mot., Ex. 10.)

On July 1, 2005, Defendant's "Team Manager," Rick McKenzie, met with Plaintiff to discuss the discrepancies between her activity logs and her actual whereabouts.  (Def.'s Mot., Ex. 8.)  Plaintiff denied any wrongdoing.  She stated that on June 28, she was helping another hospice aid care for a patient from 1:00 to 2:00 p.m.  (*Id.*)  Mr. McKenzie pointed out to Plaintiff that her activity log indicated that she was with a different patient that day from 1:15 until 2:30 p.m.  (Def.'s Mot., Ex. 9.)  As to June 30, Plaintiff stated that she found an unresponsive patient at 12:30 p.m. and that Ms. Thompson arrived at the scene between 12:30 and 1:00 p.m.  (Def.'s Mot., Ex. 8.)  According to Defendant's investigation, the incident actually occurred at 10:45 a.m., and Ms. Thompson arrived at the scene at 11:00 a.m.  (*Id.*)  Plaintiff also stated that on both days, it was possible that she was eating lunch in her car when Ms. Thompson was looking for her.  (*Id.*)  In the June 30 daily log, however, Plaintiff reported that she was in the facility without a break from 9:15 a.m. until 5:00 p.m.  (Def.'s Mot., Ex. 10.)  Plaintiff stated that the nursing home staff would be able to verify her presence at the facility on the days in question.  (Def.'s Mot., Ex. 8.)  At 3:00 p.m. on Friday, July 1, 2005, Mr. McKenzie suspended Plaintiff pending an investigation. (*Id.*)

On July 5, 2005, after the holiday weekend, Mr. McKenzie interviewed the nursing home staff.  (*Id.*)  Two nurses could not recall Plaintiff's presence at the facility in the afternoon on the days in question; in fact, both believed Plaintiff was only scheduled to be at the facility in the morning.  (*Id.*)  A different facility aide also stated that Plaintiff was not present at the facility in the afternoons.  (*Id.*)

Mr. McKenzie concluded that Plaintiff again had falsified her activity log. (*Id.*) As a result, he felt that Plaintiff's termination was warranted. (*Id.*) Mr. McKenzie attempted to arrange a meeting with Plaintiff for July 8, 2005, to inform her of the decision. Plaintiff rescheduled the meeting for July 12, 2005. (*Id.*)

On July 5, 2005, the same day Mr. McKenzie was investigating the new allegations against Plaintiff, Plaintiff met with Lisa Oullette, Defendant's Human Resources Director, and stated that she wanted to file a grievance against Mr. McKenzie for race discrimination. (Pl.'s Resp., Ex. 1.) On July 11, Plaintiff submitted her complaint in writing. (Def.'s Mot., Ex. 11.) At the July 12 meeting (which had been scheduled days earlier), Mr. McKenzie and Ms. Oullette fired Plaintiff. (Pl.'s Resp., Ex. 1.)

Plaintiff filed this suit in July 2006. Plaintiff alleges that Defendant engaged in illegal race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This matter is now before the Court on Defendant's motion for summary judgment.

## II.    Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

4

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

**III. Analysis**

Plaintiff alleges that Defendant has violated two provisions of Title VII. First, Plaintiff contends that Defendant engaged in race discrimination in violation of 42 U.S.C. § 2000e-2(a). Second, Plaintiff claims that Defendant retaliated against her in violation of 42 U.S.C. § 2000e-3(a). The Court will consider each claim in turn.

**A. Race Discrimination**

In a Title VII action, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by the defendant. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff may establish a prima facie case by offering either direct or circumstantial evidence of discrimination. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)(citations omitted). In this case, Plaintiff has presented no direct

evidence of discrimination. To establish a prima facie case based on circumstantial evidence, Plaintiff must show:

1. She is a member of a protected class;
2. She was subject to an adverse employment decision;
3. She was qualified for the position; and
4. She was replaced by a person outside the protected class, or A similarly situated non-protected person was treated better.

*Id.* Here, Defendant challenges Plaintiff's ability to meet the fourth factor of a prima facie case.

Plaintiff does not claim she was replaced by a non-protected individual; rather, she claims that a non-protected individual was treated better. To satisfy this factor, Plaintiff must show that she and a non-protected employee were similarly situated in all relevant respects and that the non-protected person was treated better. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)(citation omitted). When, as here, allegedly discriminatory disciplinary action results in the plaintiff's termination, relevant factors to be considered include whether the plaintiff and the non-protected individual dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or [Defendant]'s treatment of them for it." *Id.*

Plaintiff asserts that Mishelle Morrill, Defendant's former employee, satisfies these requirements. Ms. Morrill is not in the protected class, she and Plaintiff had the same supervisor, and both were subject to the same standards. (Pl.'s Resp. at 5.) Furthermore, Plaintiff states that she and Ms. Morrill are similarly situated because both "engaged in conduct prompting corrective action." (Pl.'s Resp. at 5.) This alone, however, is not enough to meet Plaintiff's burden. The misconduct for which Plaintiff was disciplined,

falsification of documentation, carried the possibility of discharge after a single occurrence. (Def.'s Mot., Ex. 7 at 10.)   In contrast, Ms. Morrill was cited for various less serious violations.

First, she was disciplined for absenteeism; under Defendant's Corrective Action Policy, this type of infraction merely warranted a warning after seven occurrences.  (Def.'s Mot., Ex. 7 at 9.)  Absenteeism is a fireable offense only after the tenth occurrence.  (*Id.*) Ms. Morrill's Corrective Action Record substantiates that she was warned after she accumulated seven unplanned absences.  (Def.'s Mot., Ex. 12.).  Ms. Morrill later was cited for poor job performance.  (Def.'s Mot., Ex. 13.)  Pursuant to the Corrective Action Policy, she received a warning for the violation.  (Def.'s Mot., Ex. 7 at 11.)  Ten months later, concerns were raised that Ms. Morrill was not providing complete care to patients and did not leave a "health aide note" at the facility after each visit.  Because the situation already had been resolved when the complaint was recieved, Defendant held a "Counseling Session" with Ms. Morrill rather than taking a Corrective Action.  This also accorded with Defendant's Corrective Action Policy.  (*Id.* at 3.)  Thus, while Ms. Morrill had been disciplined for various policy violations, none were serious enough to warrant discharge for a single occurrence.  Based on these incidents, therefore, Plaintiff and Ms. Morrill simply did not engage in the same conduct.  Accordingly, they were not similarly situated, and Plaintiff cannot establish the fourth factor of a prima facie case.

Eventually, however, Ms. Morrill did engage in the same conduct for which Plaintiff first was suspended and later was fired.  On July 7, 2005, Defendant received a patient complaint about Ms. Morrill.  (Def.'s Mot., Ex. 15.)  After an investigation, Defendant discovered that Ms. Morrill had falsified her Daily Activity Log.  As a result, Ms. Morrill was

fired.  (*Id.*)  Based on this conduct, Plaintiff and Ms. Morrill *were* similarly situated.  But unlike Plaintiff, Ms. Morrill was not given a second chance.  Thus, when Plaintiff and Ms. Morrill did engage in the same conduct, Ms. Morrill was not treated better; in fact, she was treated worse.  Therefore, Plaintiff cannot establish a prima facie case of discrimination on this basis, either.   Because Plaintiff cannot establish a prima facie case of race discrimination, Defendant's motion for summary judgment on this claim is GRANTED.[1]

## B.  Retaliation

Plaintiff's second claim is for retaliation under 42 U.S.C. § 2000e-3(a), which provides in relevant part that an employer may not retaliate against an employee who makes a charge of discriminatory employment practices.   To establish a prima facie case of retaliation, Plaintiff must show:

1. She engaged in activity protected by Title VII;
2. This exercise of protected rights was known to Defendant;
3. Defendant thereafter took adverse employment action against Plaintiff; and
4. There was a causal connection between the protected activity and the adverse employment action.

*Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).   Defendant argues that Plaintiff cannot establish the fourth factor of a prima facie case.

---

[1]Plaintiff suggests that Ms. Morrill's final Corrective Action Record (for document falsification) was created as part of a plot to cover up Defendant's racial motives in firing Plaintiff.  The only "evidence" Plaintiff offers in support of her claim is that the Corrective Action Record was created on the same day Plaintiff submitted a written complaint of discrimination.  Of course, this ignores the fact that the complaint about Ms. Morrill was received on July 7, and the Corrective Action Record was created a mere four days later, after an investigation by Defendant.  Plaintiff's unsubstantiated claim is therefore insufficient to avoid summary judgment in Defendant's favor.

"To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Plaintiff has produced no such evidence. When Plaintiff first was cited for falsifying documents in December 2004, Defendant could have fired her. Instead, Defendant suspended her for one day and warned her that another violation "will result in immediate termination." In June 2005, Defendant received information that Plaintiff once again had falsified her work records. Defendant informed Plaintiff of these allegations on July 1, 2005, and investigated and verified the allegations on July 5, 2005. At that point, based on its Corrective Action Policy and on its previous warning to Plaintiff, Defendant was warranted in its decision to fire Plaintiff.

Plaintiff did not complain about discrimination until July 5, 2005. When she raised her complaint, Plaintiff already was suspended for once again falsifying documents, and she knew that Defendant was investigating the claims against her. Based on her previous warning, Plaintiff also knew she would be fired once the claims were verified. Because Plaintiff did not allege racial discrimination until after the machinery of her discharge already was in motion, the Court finds no causal connection between the protected activity (her complaint) and the discharge. *See Clark v. City of Dublin, Ohio*, 178 Fed. Appx. 522, *9 (6th Cir. 2006)(finding no causal connection where Plaintiff was reprimanded for the same conduct both before and after he engaged in protected activity). Accordingly, Plaintiff has failed to establish a prima facie case of retaliation, and Defendant's motion for summary judgment on this claim is GRANTED.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: December 14, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 14, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager